In the United States District Court
for the Western District of Michigan
Southern Division at Kalamazoo

| | |
|---|---|
| Andrija Kale, Jordan Smith, David Hawkins, Brian Hire, Alec Miller, Tammy Williams, Bobbie Brust, Owen Slabach, and Micah Graff, | Case No. 1:24-cv-00677 |
| *On behalf of themselves and those similarly situated*, | |
| Plaintiffs, | Judge |
| v. | Magistrate Judge |
| Battle Creek Pizza, Inc., KB Pizza Co., Kevin Hershock, Doe Corporation 1-10; John Doe 1-10, | Jury Demand Endorsed Hereon |
| Defendants. | |

Class and Collective Action Complaint (corrected)

## I. Introduction

1. Andrija Kale, Jordan Smith, David Hawkins, Brian Hire, Alec Miller, Tammy Williams, Bobbie Brust, Owen Slabach, and Micah Graff (collectively, "Plaintiffs"), on behalf of themselves and all similarly situated individuals, bring this action against Defendants Battle Creek Pizza, Inc., KB Pizza Co., Kevin Hershock, Doe Corporations 1-10, and John Doe 1-10 (collectively, "Battle Creek Pizza" or "Defendants"). Plaintiffs seek appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiffs and similarly-situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA") and M.C.L.A. § 408.414, and unjust enrichment.

1

2.     Defendants operate approximately eleven Hungry Howie's pizza restaurants, including at least five pizza restaurants in the Battle Creek, Michigan area (the "Battle Creek Pizza" stores).

3.     Defendants repeatedly and willfully violated the Fair Labor Standards Act and the M.C.L.A. § 408.414 by failing to adequately reimburse delivery drivers for their delivery-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wages for all hours worked.

4.     All delivery drivers at the Defendants' stores, including Plaintiffs, have been subject to the same employment policies and practices, including policies and practices with respect to wages and reimbursement for out-of-pocket expenses.

5.     Plaintiffs bring this action on behalf of themselves and similarly situated former delivery drivers who elect to opt in pursuant to FLSA, 29 U.S.C. § 216(b) to remedy violations of the FLSA wage and hour provisions by Defendants.

6.     Plaintiffs also bring this action on behalf of themselves and similarly situated former delivery drivers in Michigan, pursuant to Federal Rule of Civil Procedure 23, to remedy violations of M.C.L.A. § 408.414 and M.C.L.A. § 408.472 by Defendants and based on Defendants' unjust enrichment.

## II.     Jurisdiction and Venue

7.     Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiffs' FLSA claims.

8.     Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiffs' Michigan law claims.

9.      Venue in this Court is proper under 28 U.S.C. § 1391(b) because the parties reside in this district and a substantial part of the events giving rise to the claim herein occurred in this district.

## III.   Parties

**Plaintiffs**

10.      Plaintiff Andrija Kale resides in Kalamazoo, Michigan.  Further, at all times material herein, Plaintiff Kale worked within the boundaries of the Western District of Michigan.

11.      Plaintiff Jordan Smith resides in Kalamazoo, Michigan.  Further, at all times material herein, Plaintiff Smith worked within the boundaries of the Western District of Michigan.

12.      Plaintiff David Hawkins resides in Portage, Michigan.  Further, at all times material herein, Plaintiff Hawkins worked within the boundaries of the Western District of Michigan.

13.      Plaintiff Brian Hire resides in Kendallville, Indiana.  Further, at all times material herein, Plaintiff Hire worked within the boundaries of the Western District of Michigan.

14.      Plaintiff Alec Miller resides in Belleville, Michigan.  Further, at all times material herein, Plaintiff Miller worked within the boundaries of the Western District of Michigan.

15.      Plaintiff Tammy Williams resides in Springfield, Michigan.  Further, at all times material herein, Plaintiff Williams worked within the boundaries of the Western District of Michigan.

16.      Plaintiff Bobbie Brust resides in Battle Creek, Michigan.  Further, at all times material herein, Plaintiff Brust worked within the boundaries of the Western District of Michigan.

17.      Plaintiff Owen Slabach resides in Fort Wayne, Indiana.  Further, at all times material herein, Plaintiff Slabach worked within the boundaries of the Western District of Michigan.

18.     Plaintiff Micah Graff resides in Kalamazoo, Michigan. Further, at all times material herein, Plaintiff Graff worked within the boundaries of the Western District of Michigan.

19.     Each of the Plaintiffs was an "employee" of all of the Defendants as defined in the FLSA, the M.C.L.A. § 408.414 and M.C.L.A. § 408.472.

**Defendants**

20.     Defendants jointly employed Plaintiffs and similarly situated delivery drivers at all times relevant.

21.     Each of the Defendants had substantial control over Plaintiffs and similarly situated delivery drivers' working conditions, and over the unlawful policies and practices alleged herein.

22.     Defendants were part of a single integrated enterprise.

23.     At all relevant times, the Battle Creek Pizza stores shared common management and were centrally controlled and/or owned by Battle Creek Pizza.

24.     At all relevant times, all Defendants maintained control over labor relations at the Battle Creek Pizza stores.

25.     During all relevant times, Defendants permitted employees to transfer or be shared by and between the Battle Creek Pizza stores without retraining.

26.     Defendants shared or co-determined those matters governing the essential terms and conditions of employment for Plaintiffs and similarly situated delivery drivers at the Battle Creek Pizza stores.

27.     Defendants suffered or permitted Plaintiffs and other delivery drivers to work.

28.     Defendants had direct or indirect control of the terms and conditions of Plaintiffs' work and the work of similarly situated delivery drivers, and also exercised that authority.

4

29. During all relevant times, Defendants also exercised operational control over the delivery drivers at the Battle Creek Pizza stores, including, but not limited to, control over recruiting and training of delivery drivers, compensation of delivery drivers, job duties of delivery drivers, reimbursements to delivery drivers, recruiting and training managers, design and layout of the restaurants, sales and marketing programs, public relations programs, promotional services, appearance and conduct standards, inventory, and inventory controls.

**Battle Creek Pizza, Inc.**

30. Defendant Battle Creek Pizza, Inc. is a Michigan corporation with its principal place of business in Pinckney, Michigan.

31. Kevin Hershock is the owner and operator of Battle Creek Pizza, Inc.

32. Battle Creek Pizza, Inc. is the corporate entity that appeared on Plaintiffs' paystubs for work he completed for Defendants.

33. Battle Creek Pizza, Inc. owns and operates approximately eleven Hungry Howie's pizza restaurants, including at least five pizza restaurants in the Battle Creek, Michigan area.

34. Battle Creek Pizza, Inc. has substantial control over Plaintiffs and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

35. Upon information and belief, Battle Creek Pizza, Inc. applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

36. Battle Creek Pizza, Inc. has direct or indirect control of the terms and conditions of Plaintiffs' work and the work of similarly situated employees.

5

37.     At all relevant times, Battle Creek Pizza, Inc. maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

38.     Battle Creek Pizza, Inc. was an "employer" of Plaintiffs and similarly situated employees as that term is defined by the FLSA and M.C.L.A. § 408.414 and M.C.L.A. § 408.472.

39.     At all relevant times, Battle Creek Pizza, Inc. had been an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

**KB Pizza Co.**

40.     Defendant KB Pizza Co. is a Michigan corporation with its principal place of business in Portage, Michigan.

41.     Kevin Hershock is the owner and operator of KB Pizza Co.

42.     KB Pizza Co. is the corporate entity that appeared on Plaintiffs' paystubs for work he completed for Defendants.

43.     KB Pizza Co. owns and operates approximately eleven Hungry Howie's pizza restaurants, including at least five pizza restaurants in the Battle Creek, Michigan area.

44.     KB Pizza Co. has substantial control over Plaintiffs and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

45.     Upon information and belief, KB Pizza Co. applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

46.     KB Pizza Co. has direct or indirect control of the terms and conditions of Plaintiffs' work and the work of similarly situated employees.

47.     At all relevant times, KB Pizza Co. maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

48.     KB Pizza Co. was an "employer" of Plaintiffs and similarly situated employees as that term is defined by the FLSA and M.C.L.A. § 408.414 and M.C.L.A. § 408.472.

49.     At all relevant times, KB Pizza Co. had been an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

**Kevin Hershock**

50.     Kevin Hershock is has been, the owner and operator of Battle Creek Pizza.

51.     At all relevant times, Kevin Hershock has been the owner and operator of Battle Creek Pizza.

52.     Kevin Hershock is individually liable to Battle Creek Pizza's delivery drivers under the definitions of "employer" set forth in the FLSA and M.C.L.A. § 408.472 because he owns and operates Battle Creek Pizza's stores, serves as a manager of Battle Creek Pizza, ultimately controls significant aspects of Battle Creek Pizza's day-to-day functions, and ultimately controls compensation and reimbursement of employees.  29 U.S.C. § 203(d).

53.     At all relevant times, by virtue of his role as owner and operator of Battle Creek Pizza, Kevin Hershock has had financial control over the operations at each of the Battle Creek Pizza stores.

54.     At all relevant times, by virtue of his role as owner and operator of Battle Creek Pizza, Kevin Hershock has had a role in significant aspects of Battle Creek Pizza's day to day operations.

55.    At all relevant times, by virtue of his role as owner and operator of Battle Creek Pizza, Kevin Hershock has had control over Battle Creek Pizza's pay policies.

56.    At all relevant times, by virtue of his role as owner and operator of Battle Creek Pizza, Kevin Hershock has had power over personnel and payroll decisions at the Battle Creek Pizza stores, including but not limited to influence of delivery driver pay.

57.    At all relevant times, by virtue of his role as owner and operator of Battle Creek Pizza, Kevin Hershock has had the power to hire, fire, and discipline employees, including delivery drivers at Battle Creek Pizza stores.

58.    At all relevant times, by virtue of his role as owner and operator of Battle Creek Pizza, Kevin Hershock has had the power to stop any illegal pay practices that harmed delivery drivers at the Battle Creek Pizza stores.

59.    At all relevant times, by virtue of his role as owner and operator of Battle Creek Pizza, Kevin Hershock has had the power to transfer the assets and liabilities of Battle Creek Pizza.

60.    At all relevant times, by virtue of his role as owner and operator of Battle Creek Pizza, Kevin Hershock has had the power to declare bankruptcy on behalf of Battle Creek Pizza.

61.    At all relevant times, by virtue of his role as owner and operator of Battle Creek Pizza, Kevin Hershock has had the power to enter into contracts on behalf of each of the Battle Creek Pizza stores.

62.    At all relevant times, by virtue of his role as owner and operator of Battle Creek Pizza, Kevin Hershock has had the power to close, shut down, and/or sell each of the Battle Creek Pizza stores.

63.     At all relevant times, by virtue of his role as owner and operator of Battle Creek Pizza, Kevin Hershock has had authority over the overall direction of each of Battle Creek Pizza's stores and was ultimately responsible for their operations.

64.     The Battle Creek Pizza stores function for Kevin Hershock's profit.

65.     Kevin Hershock has influence over how the Battle Creek Pizza stores can run more profitably and efficiently.

**Doe Corporation 1-10**

66.     Upon information and belief, Defendants own and operate other corporate entities and/or limited liability companies that also qualify as Plaintiffs' "employer" under the FLSA and Michigan law.

67.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**IV.    Facts**

**Class-wide Factual Allegations**

68.     During all relevant times, Battle Creek Pizza operated approximately five to eleven Hungry Howie's pizza stores.

69.     The primary function of the Battle Creek Pizza stores is to sell pizza and other food items to customers, whether they dine in, carry out, or have their food delivered.

70.     The Battle Creek Pizza stores employ delivery drivers who are primarily responsible for delivering pizzas and other food items to customers' homes and workplaces.

71.     Plaintiffs and the similarly situated persons Plaintiffs seek to represent are current and former delivery drivers employed by Defendants at the Battle Creek Pizza stores.

9

72.     All delivery drivers employed at the Battle Creek Pizza stores over the last three years have had essentially the same job duties—deliver pizza and other food items to customers.

73.     When there were no deliveries to make, Defendants' delivery drivers were required to work inside the Battle Creek Pizza stores building pizza boxes, cleaning, preparing pizza and other food items, and completing other duties inside the restaurant as necessary.

74.     At all relevant times, Plaintiffs and similarly situated delivery drivers have been paid an hourly wage rate at or close to minimum wage for the hours they worked for Defendants.

75.     Defendants require delivery drivers to purchase, maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

76.     Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to the purchase price of their vehicles, automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

77.     Pursuant to such requirements, Plaintiffs and other similarly situated employees purchase their vehicles, gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation, automobile financing, and incurred cell phone and data charges all for the primary benefit of Defendants.

78.     Defendants require delivery drivers at the Battle Creek Pizza stores to provide cellphones to use while completing deliveries for Defendants.

79.     Defendants require delivery drivers to maintain and pay for operable cellphones to use in delivering Defendants' pizza and other food items.

10

80.     The Battle Creek Pizza stores do not keep track of their delivery drivers' actual expenses.

81.     The Battle Creek Pizza stores do not reimburse delivery drivers for their actual expenses.

82.     The Battle Creek Pizza stores do not reimburse delivery drivers at the IRS standard business mileage rate for all of the miles they drive completing deliveries.

83.     At all relevant times, Plaintiffs and other similarly situated delivery drivers at the Battle Creek Pizza stores were reimbursed a flat per delivery amount of $1.00/delivery for the expenses they incurred.

84.     The delivery drivers at the Battle Creek Pizza stores have incurred more in expenses than the flat per delivery amount of $1.00/delivery.

85.     According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

   a.  2020: 57.5 cents/mile
   b.  2021: 56 cents/mile
   c.  2022 (January through June): 58.5 cents/mile
   d.  2022 (July through December): 62.5 cents/mile
   e.  2023: 65.5 cents/mile

86.     The delivery drivers at the Battle Creek Pizza stores have incurred more in expenses than those contemplated by the IRS standard business mileage rate.

87.     The delivery drivers at Battle Creek Pizza stores advance a business expense, interest free, to Defendants when they provide cars to use at work.

88.     Defendants benefit from their employees purchasing vehicles to use for their business purposes.

11

89.   Defendants benefit from the delivery drivers spending time off the clock repairing and maintaining their vehicles.

90.   Defendants benefit from the delivery drivers storing their vehicles when they are not being used to complete deliveries for Defendants.

91.   Defendants benefit from delivery drivers taking on the risk of using their vehicles to drive for Defendants' business.

92.   As a result of the automobile and other job-related expenses incurred by Plaintiffs and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA and Michigan law.

93.   At all relevant times, Defendants have applied the same pay policies, practices, and procedures to all delivery drivers at the Battle Creek Pizza stores.

94.   All of Defendants' delivery drivers had similar experiences to that of Plaintiff. They were subject to the same reimbursement policy; received similar reimbursements; incurred similar automobile expenses; completed deliveries of similar distances and at similar frequencies; and were paid at or near the applicable minimum wage rate before deducting unreimbursed vehicle costs.

95.   Regardless of the precise amount of the per-delivery reimbursement at any given point in time, Defendants' reimbursement formula has resulted in an unreasonable underestimation of delivery drivers' automobile expenses throughout the recovery period, causing systematic violations of the minimum wage laws.

96.   Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred

12

unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations.  *See* 29 C.F.R. § 531.35.

97.     Defendants have willfully failed to pay federal and Michigan state minimum wage to Plaintiffs and similarly situated delivery drivers at the Battle Creek Pizza stores.

98.     Defendants' policy of requiring delivery drivers to provide the cars used to carry out Defendants' business unjustly enriches them at the expense of their delivery drivers.

99.     The delivery drivers at the Battle Creek Pizza stores advance a business expense, interest free, to Defendants when they provide cars to use at work.

100.     Defendants reimburse their delivery drivers amounts less than they would have had to be pay if they had purchased or rented vehicles each day to use to make deliveries.

101.     Defendants reimburse their delivery drivers amounts less than they would have had to pay to own and maintain a fleet of vehicles to complete their deliveries.

102.     Defendants benefit because they do not have to employ additional individuals or expend additional time managing, monitoring, and maintaining a fleet of vehicles.

103.     Defendants benefit from the delivery drivers at the Battle Creek Pizza stores spending time off the clock repairing and maintaining their vehicles.

104.     Defendants reimburse their delivery drivers amounts less than they would have had to pay to store a fleet of vehicles to complete their deliveries.

105.     Defendants benefit from delivery drivers at the Battle Creek Pizza stores taking on the risk of using their vehicles to drive for Defendants' business.

106.     Defendants save substantial insurance costs and exposure to liability by requiring their judgment-proof minimum wage workers to take on the risk of accident or injury for them.

13

107.    Defendants benefit from not having to store the delivery drivers' vehicles when they are not in use for business purposes.

108.    Defendants are more easily able to secure loans or financing because the delivery drivers take on the substantial costs associated with providing cars needed to operate their business.

109.    Defendants need less up-front capital because the delivery drivers provide cars to make Defendants' deliveries.

110.    All of Defendants' delivery drivers conferred a benefit on Defendants by providing cellphones to use when delivering pizza and other food items for Defendants.

111.    All of Defendants' delivery drivers conferred a benefit on Defendants by providing vehicles to deliver pizza and other food items for Defendants.

**Plaintiffs' Individual Factual Allegations**

112.    Plaintiff Kale worked at Battle Creek Pizza stores beginning in approximately February 2019.

113.    Plaintiff Smith worked at Battle Creek Pizza stores beginning in approximately January 2020.

114.    Plaintiff Hawkins worked at Battle Creek Pizza stores beginning in approximately November 2019.

115.    Plaintiff Hire worked at Battle Creek Pizza stores beginning in approximately January 2020.

116.    Plaintiff Miller worked at Battle Creek Pizza stores beginning in approximately October 2019.

117.    Plaintiff Williams worked at Battle Creek Pizza stores beginning in approximately December 2019.

14

118.    Plaintiff Brust worked at Battle Creek Pizza stores beginning in approximately October 2019.

119.    Plaintiff Slabach worked at Battle Creek Pizza stores beginning in approximately September 2019.

120.    Plaintiff Graff worked at Battle Creek Pizza stores beginning in approximately October 2019.

121.    Plaintiffs worked or covered shifts at Defendants' Battle Creek Pizza stores, and were subject to the same compensation and reimbursement policies described herein at all of their locations.

122.    Plaintiffs were paid minimum wage as an hourly rate for work performed inside the store.

123.    Plaintiffs delivered pizza and other food items to Defendants' customers' homes and businesses.

124.    When they were not making deliveries, Plaintiffs worked inside the restaurant, completing tasks such as checking out carryout customers, cutting pizza, folding pizza boxes, cleaning up around the store, and taking care of other general tasks for the operation of the restaurant.

125.    At all relevant times, Plaintiffs received a flat per delivery reimbursement amount intended to cover their expenses.

126.    Plaintiffs were reimbursed $1.00 per delivery.

127.    Plaintiffs have incurred more in expenses than the flat per delivery amount of $1.00/delivery.

15

128.    Plaintiffs have incurred more in expenses than those contemplated by the IRS standard business mileage rate.

129.    When Defendants began taking a tip credit from Plaintiffs' wages, Defendants did not properly inform Plaintiffs of the requirements for taking a tip credit.

130.    When they began taking a tip credit from Plaintiffs' wages, Defendants failed to inform Plaintiffs of the cash wage they would ostensibly receive pursuant to the tip credit.

131.    When they began taking a tip credit from Plaintiffs' wages, Defendants failed to inform Plaintiffs of the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer, which amount may not exceed the value of the tips actually received by the employee.

132.    When they began taking a tip credit from Plaintiffs' wages, Defendants failed to inform Plaintiffs that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips.

133.    When they began taking a tip credit from Plaintiffs' wages, Defendants failed to inform Plaintiffs that the tip credit shall not apply to any employee who has not been informed of the tip credit requirements stated in 29 C.F.R. § 531.59(b).

134.    Alternatively, Defendants have failed to properly take a tip credit from Plaintiffs' wages because, after accounting for unreimbursed expenses, Defendants have taken more of a tip credit than they informed Plaintiffs they would be taking.

135.    Plaintiffs were required to purchase, maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

136.    Plaintiffs were required to incur and/or pay job-related expenses, including but not limited to purchasing a vehicle, automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, financing, insurance, cell phone service, GPS service, and other equipment necessary for delivery drivers to complete their job duties.

137.    Plaintiffs purchased a vehicle, gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile financing, automobile insurance, suffered automobile depreciation, and incur cell phone and data charges all for the primary benefit of Defendants.

138.    Defendants did not track the actual expenses incurred by Plaintiffs.

139.    Defendants did not reimburse Plaintiffs based on their actual delivery-related expenses.

140.    Plaintiffs were not reimbursed at the IRS standard mileage rate for the miles he drove while completing deliveries.

141.    During Plaintiffs' employment with Defendants, Defendants failed to adequately reimburse Plaintiffs for automobile and other job-related expenses.

142.    Defendants did not reimburse Plaintiffs for their actual expenses, nor did Defendants endeavor to find out what those expenses were.

143.    Defendants did not reimburse Plaintiffs for the purchase price of their vehicles or the costs related to that vehicle when the expenses were incurred.

144.    Even if Defendants were permitted to reimburse a mileage rate rather than actual costs, the mileage rate that they paid did not cover all of Plaintiffs' vehicle-related expenses.

145.    As a result of unreimbursed automobile expenses and other job-related expenses, Defendants have failed to pay Plaintiffs minimum wage as required by law.

146.     Defendants have been unjustly enriched by Plaintiffs in that they used their own vehicle and incurred vehicle-related expenses for Defendants' benefit.

147.     Defendants have been unjustly enriched by Plaintiffs in that Plaintiffs used their own cellphone and incurred cellphone-related expenses for Defendants' benefit.

## Collective Action Allegations

148.     Plaintiffs bring the First Count on behalf of themselves and all similarly situated current and former delivery drivers employed at the Battle Creek Pizza stores owned, operated, and controlled by Defendants, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

149.     At all relevant times, Plaintiffs and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiffs and the FLSA Collective minimum wage for all hours worked and failing to reimburse delivery drivers for automobile expenses and other job-related expenses. Plaintiffs' claims are essentially the same as those of the FLSA Collective.

150.     Defendants' unlawful conduct is pursuant to a corporate policy or practice.

151.     Defendants were aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked.

152.     Defendants were aware or should have been aware that federal law required them to reimburse delivery workers for expenses relating to "tools of the trade," such as, among other things, the purchase price of their vehicles, automobile costs and gasoline for delivery drivers.

153.     Defendants' unlawful conduct has been widespread, repeated, and consistent.

154. The First Count is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

155. The FLSA Collective members are readily identifiable and ascertainable.

156. For the purpose of notice and other purposes related to this action, the FLSA Collective members' names and contact information are readily available from Defendants' records.

157. In recognition of the services Plaintiffs have rendered and will continue to render to the FLSA Collective, Plaintiffs will request payment of a service award upon resolution of this action.

**Class Action Allegations**

158. Plaintiffs bring the Second Count under Federal Rule of Civil Procedure 23, on behalf of themselves and a class of persons consisting of:

> All current and former delivery drivers employed by Defendant at Battle Creek Pizza stores in the State of Michigan between the date three years prior to the filing of the original complaint and the date of final judgment in this matter ("Rule 23 Michigan Wage Class").

159. Plaintiffs bring the Third Count under Federal Rule of Civil Procedure 23, on behalf of themselves and a class of persons consisting of:

> All current and former delivery drivers employed by Defendant at Battle Creek Pizza stores in the State of Michigan between the date six years prior to the filing of the original complaint and the date of final judgment in this matter ("Rule 23 Michigan Unjust Enrichment Class").

160. Excluded from Rule 23 Michigan Wage Class and Rule 23 Michigan Unjust Enrichment Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of

19

the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Michigan Wage Class and/or Rule 23 Michigan Unjust Enrichment Class.

161.    The hours assigned and worked, the positions held, deliveries completed, and the rates of pay and reimbursements paid for each Rule 23 Michigan Wage Class member are determinable from Defendants' records.

162.    The benefits conferred by the Rule 23 Michigan Unjust Enrichment Class members and realized by Defendants are determinable from Defendants' records.

163.    For the purpose of notice and other purposes related to this action, the Rule 23 Michigan Wage Class and Rule 23 Michigan Unjust Enrichment Class members' names and contact information are readily available from Defendants.

164.    Notice can be provided by means permissible under Federal Rule of Civil Procedure 23 for the Rule 23 Michigan Wage Class and Rule 23 Michigan Unjust Enrichment Class.

165.    The Rule 23 Michigan Wage Class members and Rule 23 Michigan Unjust Enrichment Class members are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

166.    There are more than 50 Rule 23 Michigan Wage Class members.

167.    There are more than 50 Rule 23 Michigan Unjust Enrichment Class members.

168.    Plaintiffs' claims are typical of those claims which could be alleged by any Rule 23 Class member in either the Rule 23 Michigan Wage Class members and Rule 23 Michigan Unjust Enrichment Class, and the relief sought is typical of the relief which would be sought by each Rule

23 Michigan Wage Class member and each Rule 23 Michigan Unjust Enrichment Class member in separate actions.

169.    Plaintiffs and the Rule 23 Michigan Wage Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage and failing to reimburse for expenses.

170.    Plaintiffs and the Rule 23 Michigan Unjust Enrichment Class members have also unjustly enriched Defendants in the same way—by providing automobiles for use in their business at no cost to Defendants.

171.    Plaintiffs and the Rule 23 Michigan Wage Class members have all sustained similar types of damages as a result of Defendants' failure to comply with M.C.L.A. § 408.414 and M.C.L.A. § 408.472.

172.    Plaintiffs and the Rule 23 Michigan Wage Class members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct.

173.    Plaintiffs and the Rule 23 Michigan Unjust Enrichment Class sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures, and Defendants benefited from the same type of unfair and/or wrongful acts as to each of the Rule 23 Michigan Unjust Enrichment Class members.

174.    By seeking to represent the interests of the Rule 23 Michigan Wage Class members and Rule 23 Michigan Unjust Enrichment Class members, Plaintiffs are exercising and intends to exercise their right to engage in concerted activity for the mutual aid or benefit of themselves and their co-workers.

175.    Plaintiffs are able to fairly and adequately protect the interests of the Rule 23 Michigan Wage Class and Rule 23 Michigan Unjust Enrichment Class and have no interests antagonistic to the Rule 23 Michigan Wage Class or Rule 23 Michigan Unjust Enrichment Class.

176.    Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

177.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

178.    Upon information and belief, Defendants and other employers throughout the state violate M.C.L.A. § 408.414 and M.C.L.A. § 408.472.  Current employees are often afraid to assert their rights out of fear of direct and indirect retaliation.  Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.  Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

179.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

180.    The Rule 23 Michigan Wage Class and Rule 23 Michigan Unjust Enrichment Class are properly treated as subclasses pursuant to Rule 23(c)(5).

181.    Common questions of law and fact exist as to the Rule 23 Michigan Wage Class that predominate over any questions only affecting Plaintiffs and the Rule 23 Michigan Wage Class members individually and include, but are not limited to:

a.   Whether Defendants paid Plaintiffs and the Rule 23 Michigan Wage Class members at the proper minimum wage rate for all hours worked;

b.   Whether Plaintiffs and the Rule 23 Michigan Wage Class members were subject to a common expense reimbursement policy that resulted in wages to drop below legally allowable minimum wage and overtime;

c.   Whether Plaintiffs and the Rule 23 Michigan Wage Class were subject to a policy that required them to purchase, maintain and pay for safe, operable, and legally compliant automobiles to use in completing deliveries;

d.   Whether Plaintiffs and the Rule 23 Michigan Wage Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

e.   Whether Defendants reimbursed Plaintiffs and the Rule 23 Michigan Wage Class members for their actual expenses;

f.   Whether Defendants reimbursed Plaintiffs and the Rule 23 Michigan Wage Class members at the IRS standard business mileage rate for the miles they drove in making deliveries;

g.   Whether Defendants reimbursed Plaintiffs and the Rule 23 Michigan Wage Class members based on a reasonable approximation of the expenses they incurred;

h.   Whether Defendants failed to pay Plaintiffs and the Rule 23 Michigan Wage Class in a timely manner as described by MCL § 408.472, and, if so, whether the wages owed are "in dispute";

i.   Whether Defendants were unjustly enriched by Plaintiffs and the Rule 23 Michigan Wage Class by having to provide and use their own vehicles for Defendants' benefit; and

j.   The nature and extent of class-wide injury and the measure of damages for those injuries.

182.     Common questions of law and fact exist as to the Rule 23 Michigan Unjust

Enrichment Class that predominate over any questions only affecting Plaintiffs and the Rule 23

Michigan Unjust Enrichment Class members individually and include, but are not limited to:

a.  Whether Plaintiffs and the Rule 23 Michigan Unjust Enrichment Class members were subject to a common policy that required them to provide cars to complete deliveries for Defendants;

b.  Whether Plaintiffs and the Rule 23 Michigan Unjust Enrichment Class members were subject to a common automobile expense reimbursement policy;

c.  Whether Plaintiffs and the Rule 23 Michigan Unjust Enrichment Class members were subject to a common policy that required them to provide cellphones to use when completing deliveries for Defendants;

d.  Whether Plaintiffs and the Rule 23 Michigan Unjust Enrichment Class members were subject to a common cellphone expense reimbursement policy;

e.  Whether Plaintiffs and the Rule 23 Michigan Unjust Enrichment Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

f.  Whether Defendants avoided business expenses they would have otherwise been required to cover but for Plaintiffs and the Rule 23 Michigan Unjust Enrichment Class providing cars and cellphones to use to make deliveries;

g.  How much it would have cost Defendants to operate their business but for Plaintiffs and the Rule 23 Michigan Unjust Enrichment Class providing cars and cellphones to use to make deliveries;

h.  Whether Defendants avoided storage costs, insurance, purchase costs, financing charges, risk of loss of property, employment costs relating to the overseeing and maintaining of a fleet of cars, and other costs as a result of Plaintiffs and the Rule 23 Michigan Unjust Enrichment Class providing cars to use to carry out Defendants' business;

i.  Whether Defendants benefited from Plaintiffs and the Rule 23 Michigan Unjust Enrichment Class providing vehicles and thereby covering substantial business expenses for Defendants;

j.  Whether Plaintiffs and the Rule 23 Michigan Unjust Enrichment Class conferred a benefit on Defendants that Defendants were aware of;

k.   Whether Defendants accepted the benefits conferred on them by Plaintiffs and the Rule 23 Michigan Unjust Enrichment Class;

l.   Whether it would be unjust for Defendants to retain the benefit conferred on them by Plaintiffs and the Rule 23 Michigan Unjust Enrichment Class without compensating for it;

m.   The nature and extent of class-wide injury and the measure of damages for those injuries.

183.   In recognition of the services Plaintiffs have rendered and will continue to render to the Rule 23 Michigan Wage Class and Rule 23 Michigan Unjust Enrichment Class, Plaintiffs will request payment of a service award upon resolution of this action.

## V.   Causes of Action

### Count 1
### Failure to Pay Minimum Wages - Fair Labor Standards Act
### (On Behalf of Plaintiffs and the FLSA Collective)

184.   Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

185.   Plaintiffs and the FLSA Collective were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

186.   Defendants paid Plaintiffs and the FLSA Collective at or close to minimum wage for all hours worked.

187.   Defendants required Plaintiffs and the FLSA Collective to pay for their vehicle and automobile expenses and other job-related expenses out of pocket, and failed to properly reimburse Plaintiffs and the FLSA Collective for said expenses.

188.   By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiffs and the FLSA Collective.

189.   Plaintiffs and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

25

190.    As a result of Defendants' willful violations, Plaintiffs and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**Count 2**
**Failure to Pay Minimum Wage – M.C.L.A. § 408.414**
**(On Behalf of Plaintiffs and Rule 23 Michigan Wage Class)**

191.    Plaintiffs restate and incorporate the following allegations as if fully rewritten herein.

192.    Defendants paid Plaintiffs and the Rule 23 Michigan Wage Class below minimum wage for the hours they worked by requiring them to pay for their vehicle, automobile expenses and other job-related expenses.

193.    The Michigan Workforce Opportunity Wage Act, M.C.L.A. § 408.411, *et seq.* requires that employers be paid not less than minimum wage as determined by an inflation index ($9.65/hour in 2020 and 2021) for all hours worked.

194.    Because Defendants required Plaintiffs and the Rule 23 Michigan Wage Class to pay for their vehicle, automobile expenses and other job-related expenses out of pocket, Defendants failed to pay Plaintiffs and the Rule 23 Michigan Wage Class minimum wage.

195.    By not paying Plaintiffs and the Rule 23 Michigan Wage Class at least minimum wage for each hour worked, Defendants have violated M.C.L.A. § 408.414.

196.    As a result of Defendants' violations, Plaintiffs and the Rule 23 Michigan Wage Class are entitled to damages, including, but not limited to unpaid wages, unreimbursed expenses, an additional one times unpaid wages/unreimbursed expenses in liquidated damages, costs, and attorney fees pursuant to MCL 408.419.

26

**Count 3**
**Unjust Enrichment**
**(On Behalf of Plaintiffs and the Rule 23 Michigan Unjust Enrichment Class)**

197.     Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

198.     Plaintiffs and the Rule 23 Michigan Unjust Enrichment Class have conferred a benefit upon Defendants, namely, providing and maintaining "tools of the trade" for Defendants' benefit.

199.     The "tools of the trade" include vehicles, insurance for those vehicles, and cellphones.

200.     Defendants knew that Plaintiffs and the Rule 23 Michigan Unjust Enrichment Class conferred that benefit on Defendants.

201.      As described above, Defendants received benefits as a result of Plaintiffs and the Rule 23 Michigan Unjust Enrichment Class providing and maintaining "tools of the trade."

202.     The benefits include, but are not limited to, direct and indirect financial benefits like increased profits and increased ability to compete on the price of Defendants' products.

203.     Defendants did not compensate or under-compensated Plaintiffs and the Rule 23 Michigan Unjust Enrichment Class for these benefits.

204.     Accordingly, an inequity would result to Plaintiffs and Rule 23 Michigan Unjust Enrichment Class because of the retention of this benefit by Defendants.

205.     As a result of Defendants having been unjustly enriched, Plaintiffs and the Rule 23 Michigan Unjust Enrichment Class are entitled to compensation for the value of the benefit Plaintiffs and the Rule 23 Michigan Unjust Enrichment Class conferred on Defendants.

**WHEREFORE**, Plaintiffs Andrija Kale, Jordan Smith, David Hawkins, Brian Hire, Alec Miller, Tammy Williams, Bobbie Brust, Owen Slabach, and Micah Graff pray for all of the following relief:

A.      Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiffs and their counsel to represent the collective action members.

B.      Unpaid minimum wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C.      Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

D.      Designation of Plaintiffs as representatives of the Rule 23 Michigan Wage Class members and Rule 23 Michigan Unjust Enrichment Class, and counsel of record as Class Counsel.

E.      A declaratory judgment that the practices complained of herein are unlawful under the Workplace Opportunity Wage Act, M.C.L.A. § 408.411, *et seq.*

F.      An award of damages under M.C.L.A. § 408.419, based on Defendants' failure to pay minimum wages, calculated as an additional one time of back wages as liquidated damages, attorneys' fees, and costs.

G.      An award of the value of the benefits for which Defendants were unjustly enriched;

H.      An award of prejudgment and post-judgment interest.

I.      An award of the value of the benefits for which Defendants were unjustly enriched on behalf of the Rule 23 Michigan Unjust Enrichment Class.

J.       An award of costs and expenses of this action, together with reasonable attorneys'

fees and expert fees.

K.       Such other legal and equitable relief as the Court deems appropriate.

Respectfully submitted,

*/s/ Bradley K. Glazier*
Bradley K. Glazier (P35523)
Robert M. Howard (P80740)
Cunningham Dalman, PC
321 Settlers Road
Holland, MI 49423
616.459.8835
*brad@cunninghamdalman.com*

*/s/ Frank Raimond*
Frank Raimond (NY Bar # 4409959)
RAIMOND & STAINES, LLC
305 Broadway, 7th Floor
New York, NY 10007
Telephone: (212) 884-9636
frank@raimondstaines.com

*/s/Allen Wong*
Allen Wong (NY Bar # 4304192)
ALLEN WONG PLLC
305 Broadway, 7th Floor
New York, NY  10007
Telephone: (646) 801-8778

*/s/ Andrew Biller*
Andrew R. Biller (Ohio Bar # 0081452)
Andrew P. Kimble (Ohio Bar # 0093172)
BILLER & KIMBLE, LLC
8044 Montgomery Road
Suite 515
Cincinnati, OH 45236
513-202-0710 (Phone)
614-340-4620 (Fax)
*abiller@billerkimble.com*
*akimble@billerkimble.com*

*Counsel for Plaintiffs and the putative class*

## **JURY DEMAND**

Plaintiffs hereby demand a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

*/s/Bradley Glazier*
Bradley K. Glazier